hearing this honorable appellate court for the second district is now open. The Honorable Justice Robert D. McLaren presiding along with Justices and B. Jorgensen and Mary S. Shostak. The case is number 220369 Joseph Lucania plaintiff appellee versus Bruce Lucania defendant appellant arguing for the appellant Jeffrey M. Reed arguing for the appellee Christopher Warmbull to read. You may proceed. Thank you. Your honors. Good morning. May it please the court. It is Jeff Reed. I represent the defendant appellant Bruce Lucania and there were a couple of motions subjects to this appeal. I would like to start with the motion to vacate. Um, the vacate should have been granted when the trial court was provided a fact showing that the plaintiff appellee Joseph Lucania perjured himself and lied in verified discovery regarding the true source of the $150,000 loan that was the subject matter of the loan litigation. Specifically, Mr. Joseph Lucania had represented in verified discovery and under oath at trial that the source of the $150,000 was entirely his personal funds when in fact $50,000 of the $150,000 he had taken from his disabled sister Virginia Lucania's account and passed it under the guise of part of a personal loan to Bruce Lucania and the there are I don't want to that it was the same $50,000 that went into that account as the same $50,000 that came up. Um, Justice Shostak, the the way that we know that is that there was a counter withdrawal that was discovered in the concurrent probate litigation that shows that the $50,000 was withdrawn on the same day as the the cashier's check that was issued. And so we have the cashier's check. We have the counter withdrawal from Virginia Lucania's account and the the subpoena production from U.S. Bank ties those two together and shows that it was in fact from Virginia Lucania's accounts and not from Joseph Lucania. And we know in response to all of these allegations that this money was misappropriated misappropriated not once does Joseph Lucania in the court below in response to his motion to vacate in our response to Bruce's motion to vacate or in Applebee's brief does he ever dispute the fact that he took the money from Virginia's account and he doesn't dispute the fact that he lied under oath. That is an uncontested fact that not once has Joseph Lucania attempted to explain or deny. And so may I interrupt and ask you said that he lied. What did he say? Did he say this never came from anybody's account? I took this from a piggy bank. What did he say that you claim is a lie. He said a few different things. Justice McLaren and what. Let's start with the trial testimony. He testified that the one hundred and fifty thousand dollars was debited from his account. It was not debited from his account. Fifty thousand dollars was debited from his sister his disabled sister's account. So he represented under oath that it was one hundred and fifty thousand dollars was debited from his account. It was not. He represented in answers to verify discoveries. Specifically there were two interrogatories posed to Joseph Lucania where Bruce Lucania asked Joseph to disclose the source of the funds. And the response was from Joseph Lucania was that he affirmatively stated that one hundred and fifty thousand dollars was sourced from his personal funds. And that is not true. And in response to us for production where he's asked to produce documents evidencing the source of the funds, all he does is produce the fifty thousand dollar cashier's check and the one hundred thousand dollars cashier's check and does not. He omits the counter withdrawal slip that would have connected the fact that it was he withdrew directly from his disabled sister's fifty thousand dollars that he misrepresented to the trial court was his personal funds. Oh, I'm sorry. Go ahead. Finish. No, go ahead. And my bottom line question is, why does it matter? In other words, if a loan is made for one hundred and fifty thousand dollars, why is the source of the loan the end all be all from your perspective? The reason that it matters, Justice Jorgensen, equity provides that a fraudster or a perpetrator of a fraud cannot benefit from his scheme. And so if the in fact, Joseph Lucania took fifty thousand dollars from his disabled sister, thereafter, he files a lawsuit in his individual capacity, not in his capacity as an executor, not on Virginia's on behalf of Virginia's estate. If he is then attempting to collect and benefit from his theft, equity provides that that cannot happen. So that's why it matters. He's trying to collect a debt, at least partially, that he does not have the standing to collect. And so with regard to the motion to vacate, there were two different avenues through which Bruce requested that the motion vacate. The first was under Davis and that Davis provides that a judgment can be vacated based on perjured testimony. When that testimony is false, it's willfully and purposely given and it's material and it would have controlled the result. And as I've discussed, the testimony is without a doubt false. Joseph does not contest that. It was willfully and purposely given in that, again, he's attempting to collect a debt, at least partially, that does not belong to him. And I don't want to muddle things. And we have the concurrent. Let me ask you a question. If that debt that that doesn't belong to him, who does that who does it belong to? That that should have if the debt exists, it should be rightfully collected or pursued by a representative of Virginia's estate. That's a good point. Then why are you pursuing it? How do you have standing to pursue it? We're not. So the there's no Bruce standing to collect. Joseph doesn't have standing to collect Joseph. This is an action on a loan note that Joseph is pursuing. And so it's we need to properly address what is happening at the trial court level is that Joseph is attempting to collect a debt that rightfully belongs to Virginia's estate. And it's his standing that matters at the trial court level. And he does not have the standing to collect on that. Are you then inherently agreeing that you owe on the debt, the hundred thousand dollars? That that question that needs to be investigated further what we've How about you just answer it now and tell me, I mean, if that's your argument, are you then therefore saying that the balance of the debt is truly do an owing? Justice Jorgensen, because of the fraud that has been perpetuated, we cannot say with certainty what the source of the $100,000 is. And so what we do know that you're the one that got it. And the money is due, correct? If money if any money is due, it's it would be owed to Joseph money, correct? But again, we keep going back to the question of let me ask you this, wouldn't let's assume that you're that the judgment stands and the $150,000 is paid back. Would Virginia's estate then have a separate claim that you would not be a part of? Wouldn't that be between Bruce? No, between Joseph and Virginia's estate? It should be between it should not be between Joseph's and Virginia's estate. Joseph has does not have the standing to collect anything on Virginia's behalf. And if we look at the probate, I don't again want to muddle this, but Joseph represented in the probate litigation that there were no estate assets. And now he's essentially attempting to collect the state assets. So there's misrepresentations being made in the probate litigation. There's misrepresentations being made in the loan on Virginia's behalf. In that regard, if he took it out of her estate, and he was intending to replace it back into her estate, then why wouldn't he have standing to collect it? I believe he's a fiduciary in some way, shape or form with her estate. And in addition, there too, isn't there a proceeding in a probate estate that's supposed to make these determinations, which means that your arguments have not yet come into fruition, which means your premises have not been established yet, which means this is somewhat premature. Your Honor, it's not premature because Joseph has no intent of repaying. How do you know that? Was it ever raised in the trial court? Isn't it supposedly being raised right now in the probate proceedings? We know that he has no intent. It's been raised throughout the probate litigation and in the loan litigation. And there is, again, widespread evidence of the misappropriation of assets, which goes to what Bruce Lucania was trying to assert as an affirmative defense that was stricken in that there is absolutely no evidence that Joseph is simply attempting to collect an estate asset and intends on paying it back because he's repeatedly lied under oath regarding the true source of the funds. He's lied in the probate litigation. I read your briefs and I couldn't find the words counterclaim or set off anywhere in the briefs. Should there have been a counterclaim filed based upon what you're saying, which has supposedly been established by the perjurious conduct? In other words, there were elements in a counterclaim or a set off that were established by the perjury and you didn't raise it either in your briefs or apparently below. Your Honor, it was raised below in a couple of different ways. It was attempted to be addressed in the affirmative defense. And there was also a motion to stay the current lawsuit pending what was going to be addressed in the probate litigation, which was a potential set off or what would be the true amount of the money that was misappropriated from Bruce Lucania's inheritance by Joseph Lucania in the probate litigation. So it was attempted to be addressed in a couple different ways. Assuming an arguendo that your claim has merit that the $50,000 came from Virginia's estate and Joseph never intended to do anything but embezzle the funds, then if you establish that in the probate proceedings, will you not get a judgment against Joseph, which will then offset or partially discharge the amount of judgment that he is claiming from you? That may be an option in the probate court, but I keep having to go back to the question of what is Joseph standing to collect on a debt owed to the estate in the first instance? Did you ever seek joinder between this proceeding and the denied? Yes, Your Honor. Did you appeal the denial? The joinder was sought in the probate litigation and that the probate litigation is ongoing. So it has that decision has not been appealed. Mr. Reid, let's talk about your tortious interference case. I as Judge McLaren went through the briefs as well as the record. I didn't see a transcript or bystanders report attached to that, nor did I see any pleadings attached from the probate case. Can you speak to that? Your Honor, the probate litigation, so the probate pleadings and the probate litigation was they were attached as exhibits to that. I know that there was a request to supplement the record with some of the proceedings from the probate case, which was denied. But that was, to my understanding, incorporated into the motion to vacate some of the pleadings and the motions that had been filed in the probate litigation. How about the motion to strike or any of the other motions that were heard in the lower court? Were transcripts, was there a court reporter in those proceedings? There was not a court reporter in the motion to strike. There is not a bystanders report. It is Bruce's position that because the motion to strike is reviewed de novo, that the pleadings are, the motion is available. But yes, there is not, there was not a court to strike law. You said in your brief that the perjury that Mr. Joseph committed was so unabashed that sanctions should have been applied by this particular trial court judge, apparently for the perjury committed in the probate court. Am I misunderstanding what your brief was attempting to achieve? Your honor, the conduct of Joseph Lucania in lying in discovery in the loan litigation, in this litigation, lying in his interrogatories, in his request to produce and lying under oath is sanctionable conduct in and of itself. What the brief was attempting to do was to show in the greater context, the scheme that's being perpetuated and we are not seeking sanctions for any of Joseph's misconduct in the probate case. He's been sanctioned in that case. We are not seeking, we're only saying for his lies under oath right now in perpetuating a fraud on the trial court, in initiating a lawsuit that he had no standing to collect a debt for that he should be sanctioned and that is an abuse of discretion not to order sanctions. Did I misunderstand you? Did you say that he was sanctioned in the probate proceedings? Yes, your honor. For what? Not for any conduct in the loan litigation. Not for any of that conduct. Your time is up. You'll have five minutes for rebuttal. Are there any other questions that Justices Jorgensen or Shostak would like to Mr. Wormbold, you may proceed. Thank you, your honor. Good morning, your honors. Good morning, Mr. Reed. May it please the court. My name is Christopher Wormbold and I along with attorney Patrick Canale represent the appellee in this case, Mr. Joseph Lucania. As your honors are aware, this case arises from a loan that Joseph made to his brother, Bruce Lucania in June of 2014 in the amount of $150,000 which Bruce failed to ever repay at any point. The purpose of the loan was pretty simple. It was to enable Bruce to purchase, rehabilitate and flip a residential investment property and then the sale of that residential investment property would trigger repayment. So this was the line of work that Bruce was involved in. He testified to purchasing homes and distress situations, fixing them up and selling them for a profit, flipping homes. Bruce admitted that the money was loaned, that he purchased and rehabilitated this house which was located on No Wood Drive in St. Charles, Illinois with the money that was loaned to him. And then after rehabbing this house for nine months, he turned around and sold that house to his daughter, Tanya. And then after selling the home, decided to never repay his brother, Joseph, any of the money that was lent. And so simply stated, Bruce broke a promise that he had made to his brother, Joseph. And therefore, because he broke that promise to repay, he breached a contract he had with his brother, which prompted his brother, Joseph, to file suit to recoup that money that was lent to Bruce. Isn't it relevant, counsel, as to whether or not the monies that he lent to his brother were, in fact, monies that did not belong to him? Is that relevant? And if so, how? And if not, how is it not relevant? Well, it's not relevant, Judge, because the source of funds was never made an issue at trial at any point. It wasn't made an issue in the pleadings. The complaint was very straightforward. It barely exceeded one typewritten page. It was five paragraphs. And there was an admission by Bruce Lucania that he was lent and accepted $150,000. It was never raised in any pleading in the answer to the complaint with respect to the source of funds. And Judge Murphy honed in on that. And that was a specific reason why these post-trial motions were denied. My first point, Your Honor, that I would like to make is that this whole contention that Bruce makes that the trial outcome was obtained or the result of some sort of perjury, that just never happened. The trial outcome was obtained based on unimpeached testimony that was corroborated by Bruce Lucania at the trial. The source of funds, again, was never made an issue at trial. The pleadings make that clear. The trial transcript make that abundantly clear. So this is something that is created post-mortem that was never an issue in the case. Again, it's very important. And you see it right from the answer to the complaint that Bruce admitted he was lent $150,000. When you're loaned something and you accept it, that means you took something that wasn't yours. That was someone else's. Well, he claims that the perjury in this case occurred. Well, one of the reasons or one of the ways perjury in this case occurred was because Joseph signed an affidavit as to the funds. And he's saying that those funds weren't, in fact, procured the way Joseph said they were. Yes. So first, Justice Shostak, again, the source of funds was never incorporated or part of the complaint that was filed. That claim is really the result of copyediting what the complaint stated. And he maintained that that was Joseph's personal funds that he lent to Bruce. So he didn't lie when he said that. And Bruce has never denied that he accepted $150,000 from his brother, Joseph. A lot of this is really a distraction to take away from the obvious point here that Bruce got the benefit of $150,000 that wasn't his, but he's trying to find any reason to avoid having to repay that money years after the fact. Mr. Wormald? Yes, Your Honor. Did the judge ever determine that the statements, whether they were false or not, were not perjury because they were not material? He did say it was not material to the case, Judge. So that was essentially a finding of fact? Right. And in order to overturn his judgment, the finding has to be determined to be against the manifest way to the evidence. I believe it's an abuse of discretion, Judge, with respect to denial of a motion to vacate. But nevertheless, regardless of whatever the standard of review is, I don't believe there was error committed in this case. Bruce claims that the source of the funds was a central issue in this case from the beginning, but that claim is not substantiated in any of the pleadings, Your Honors, or the common law record when you review it. The issue was truly non-existent through the litigation. This claim that there was newly discovered evidence, that never occurred. In order for something to be newly discovered, the evidence has to be supposedly newly discovered evidence, was available prior to trial. In fact, it was available nine months before a lawsuit was ever even filed in this case. And if the explanation is to unavailability is unreasonable, then the trial court does not have to consider it. Litigants cannot stand mute, lose that trial, and then after losing a trial, frantically attempt to gather evidence in order to show that the trial court committed error. That is precisely what happened in this case. Bruce and his attorneys had the information they claimed to be newly discovered months before the lawsuit was filed. There was a conscious decision made to do nothing with that information when suit was filed in the answer to the complaint when the trial occurred during any of the testimonies that occurred during the trial. And now they want Joseph to be held accountable for that conscious decision. That was their trial strategy. And because it didn't work out in their favor, they're not entitled to another bite at the apple or a do over. Bruce can't say Joseph prevented him from discovering something that he already had possession of. That's just impossible. The motion of vacate for that reason, as I stated earlier, and when it denied it, Bruce's motion, the court didn't commit error because it can't be said that newly discovered evidence or it was newly discovered evidence because it was available to Bruce pre-suit. That decision was reasoned and it can't be said that Judge Murphy acted arbitrarily or without conscientious judgment in denying that motion of vacate. Similarly, for my second point, it can't be said that it was an abuse of discretion when the court denied Bruce's motion for sanctions. For one, Bruce's argument shouldn't even be entertained because it centers around unsubstantiated allegations and a completely unrelated case involving Virginia Lucchini as a state, Virginia being Bruce and Joseph's deceased sister. That case has absolutely nothing to do with the case that was tried before Judge Murphy in March of last year. It stands to reason and the question is clear that how could Joseph ever be mandatorily sanctioned is what Bruce states in his brief that sanctions become mandatory when you consider whatever he claims to have occurred in this probate litigation when the probate litigation is the unrelated case. Is the misappropriation allegation in the probate court still pending? Everything is still pending, Judge, in that case. That case is founded upon a will contest and then there's a connected tortious interference claim. There is a will that Virginia Lucchini had in 2012 that has not been invalidated but that will leaves everything to Joseph Lucchini 100% and that is what Bruce is seeking to invalidate and then in addition or in conjunction with that claim that Joseph somehow tortiously interfered with whatever expectancy he claims he was entitled to. But again, with respect to the motion for sanctions, the source of funds was not a central issue in this case. Bruce never made it an issue during in his pleadings. There wasn't an offer of proof made at trial. Joseph was the first witness to testify at that trial, Your Honors. There was no cross-examination concerning the source of funds, not a single inquiry. There were no exhibits that were offered. There were no exhibits that were even used during that trial and no impeachment was accomplished or attempted for that matter. And again, there was no offer of proof made. In denying Bruce's motion for sanctions, Judge Murphy stated that the source of funds again was not a material issue at trial and because there wasn't even an attempt to make it an issue at trial, the motion for sanctions was denied. There wasn't this fortuitous discovery event of a counter-withdrawal slip. That never occurred because that document was in Bruce's hands pre-suit, nine months pre-suit. So for those reasons, it cannot be said that a reasonable, no reasonable person could agree with Judge Murphy, Judge Murphy's decision to deny the motion for my final point, Your Honors, is with respect to the affirmative defense that Bruce had asserted early on when he answered Joseph's complaint and with respect to the court's decision to strike that affirmative defense. As Your Honors are aware that that affirmative defense was styled as repayment. However, when you look at the facts that were alleged in that pleading for repayment, it doesn't constitute repayment in any sense of the word. It's again, it essentially states that Bruce is claiming he believes he was going to inherit some unknown sum of money in the future from his deceased sister's estate and since I did not inherit that money on account of from Joseph repaid. It's in essence like a two wrongs make a right defense. It just doesn't follow. It's not repayment. The rule in Illinois is when a plaintiff is not convinced that the facts pled by a defendant constitute an affirmative defense, that plaintiff should move to strike it and that's exactly what Joseph did. The repayment defense didn't defeat or avoid the legal effect of Joseph's claim. The defense wasn't proper and Judge Murphy was correct in striking it because that's just not repayment. Repayment or payment is a very straightforward concept. We all know what payment means. Mr. Wormald, could the allegations that related to repayment, could they have been possibly a set off or a counterclaim? Perhaps they could have, but that was none of that was ever attempted either. As I stated, when the motion of strike was granted, there was no attempt made by Bruce to replead or plead any separate or new affirmative defenses. The case went on. It went to trial. There was no attempt at making any form of argument to that effect during the trial and all of that is waived. The only thing that Bruce claimed was I repaid Joseph, but he didn't technically repay him. There wasn't a penny repaid. He says he claims he repaid him because I should have received money in some unrelated case and oh by the way, I don't even know what that amount of money I was supposed to get is, but I believe it should at least be more than $150,000. Let's just forget about this whole thing. If he had alleged an amount certain, did he also allege that he would have paid that amount to Joseph? No, he never alleged he would have paid that to Joseph. The only thing that Bruce's affirmative defense really made abundantly clear is that he never had any intention of paying back the $150,000. That's it. The terms of the loan never involved inheriting money from Virginia's estate. Virginia was alive when the loan was made, so how could Bruce ever even say that that would have been a term for repayment because Virginia's estate could have been worth nothing. It could have been worth... Are you saying it's impossible for him to make the claim or are you just saying that in reality it doesn't fit? Well, both. Both. In reality, it just doesn't fit, but it's also impossible to make that claim. Well, it's possible to make the claim, but that doesn't mean it makes any sense because, again, Bruce isn't entitled to that money. At best, it's an expectancy, but expectancies can change. Virginia Lucania, even if you want to entertain the idea that she was going to leave her brother Bruce any money, she could have changed her mind before she passed away. So, in that respect, it's impossible for Bruce to say that constitutes repayment or that was a term for repayment because it just wasn't. Okay. Your time is up, sir. Does Justice Jorgensen or Justice Shastak have any questions? Okay. I have one question. In the fraud allegation, there were Joseph... Bruce did ask some questions about that in the interrogatories, didn't he? There was an interrogatory with respect to asking for Joseph to state what the source of funds were and he answered that it was from his personal funds. Nothing further. Justice Jorgensen? No. Thank you. Thank you, Your Honor. Thank you. Mr. Reed, you may proceed with rebuttal. Thank you, Your Honor. Briefly, specifically with regard to the statement by Mr. Warmbould that the source of the funds was purportedly never made an issue. The source of the funds, that's why we're not talking about whether an interrogatory or a response was perhaps responsive to an interrogatory or fell within the scope of it. Joseph was asked directly to reveal the source of the funds and he was asked directly to produce any documents related to that. And so, attempts were made to discover that and to make it at issue and to say that it wasn't made issue at trial when obvious attempts were made to make it an issue prior to that. That argument should not stand. What about the argument that you received the teller's conveyance or transfer or certificate before the trial ever began? Your Honor, we have this paradox where we're saying that, or not we, but the trial court stated that for the purposes of a standing analysis and for the purposes of the affirmative defense, the estate case is a separate case and we can't consider any of that. But for the purposes of whether evidence is newly discovered, then we can look to the probate case. These positions can't be reconciled. For the sake of the loan litigation, if we're saying that the probate estate, the probate litigation is a separate case, for the sake of the loan litigation, Bruce satisfied his requirement under Wolf and Ostendorf in exercising due diligence. Those cases stand for if you ask questions, pointed questions, you're exercising your due diligence and if the answerer to those questions misleads or the blame lies with the answering party who has misled and misrepresented those facts. Shouldn't you have always, if you're saying that your position is what it is, you should have always suspected that he took that money from the estate and then you also, in your opinion, receive more information as Justice McLaren says about the transfer of funds or the proof that you had from the bank. That was before the trial. Why wouldn't you utilize that at the trial and now say it's newly discovered? It's not really newly discovered. It was information produced in the estate litigation, but the reason that connection was attempting to be made, yes, it was suspected and that's why those interrogatories were asked and that's why the it was suspected and so when those questions are posed and the answer is a blatant misrepresentation, the fault lies with the answering party and not with Bruce Lucania. So he has exercised his due diligence as required under Wolf and Ostendorf and we can also look at the other side of the coin and that subpoena production from U.S. Bank from 2018 was provided to Joseph Lucania's counsel. We know that they would never assist him in perpetuating any sort of fraud and so when they have that information at that disposal and then are assisting with interrogatories, I'm not trying to lay blame on one side or the other, but they had that information as well and then their client misrepresented. It's your burden, it's not their right. The burden under Wolf and Ostendorf in exercising due diligence within the loan litigation was satisfied by Bruce Lucania and with regard to the affirmative defense briefly, what happened was that the trial court took a question of fact away from the trier of fact. Bruce is required to set forth plainly the facts constituting an affirmative defense. He did that. Whether or not he can meet that burden of proving his affirmative defense by a preponderance of the evidence, that's a question for him. It's a question of fact and whether he can do that at trial. It's Bruce's contention that that was prematurely stricken by the trial court. I would entertain any additional questions that the court has. Otherwise, Bruce asks that the courts reverse the trial court and grant the motion to vacate. Any other questions? I have no other questions. Thank you. Mary? Mary, do you have any? You're turned off. No, I don't have anything further. Thank you, gentlemen. Thank you. Thank you, gentlemen. We'll take the case under advisement. Mr. Kaplan, would you please close the proceedings? Thank you.